It's the United States versus Figueroa, number 23-1742. May it please the Court, Tim Shepard from the Office of the Federal Public Defender on behalf of the appellant Luis Figueroa. I'd like to reserve two minutes for rebuttal, please. That will be granted. Thank you. Mr. Figueroa was charged with undisputedly serious crimes below, but that doesn't change the fact that he's entitled to certain statutory and constitutional rights, several of which were violated in this case. The Court's asked us to focus on two issues, the kidnapping instruction and the speedy trial issue. If I have time, I would also like to briefly address the statute of limitations issue, but if the Court will indulge me, I understand if that's not the focus. Starting with the kidnapping instruction, the district court here erred by denying Mr. Figueroa's request for a forcibly instruction as part of the kidnapping jury instruction. This Court should look to the plain meaning of the text, and here, 18- I mean, isn't this a usual practice in district court, that it's not part of the standard instruction? I understand it's not, we don't have a model instruction here, but- I wouldn't say that it's standard practice. I would say courts are divided. I think courts, even in this circuit, are divided. The government has pointed to the Epstein case where no forcible instruction was given. We've pointed to the Sryuth case where a forcible instruction was given. The 5th and 10th circuit patterns don't include a forcible instruction. The 11th circuit does. I don't know how often it comes up, how often it's challenged, but I can say it's undisputed that the common law definition stated in Black's law is forcible conduct. That is, and consistent with canons of construction, if kidnapping were just to mean the broader kidnapping statute, it would render the rest of the forms of violence in the statute surplusive. Is this really the case where we should be addressing this? Isn't it harmless error based on all of the violence here? I don't think that it was harmless error. I think, as the court explained in Waller, this is a decidedly heavy burden to show the harmless error. Here, it's not enough just to show what the jury could have or should have or would have done. The government has to show that, beyond a reasonable doubt, that the jury was not affected by the error. And I think that is a really difficult thing to show, where the jury heard that it didn't have to find forcible conduct. It heard multiple theories of kidnapping, any of which it would have had to be unanimous on. It heard complicated and lengthy testimony, including at times somewhat contradictory testimony from the victim in this case. And because the government was not arguing for force to necessarily be connected with unlawfully holding, keeping, detaining, and confining a person, they didn't present to the jury a case that necessarily tied forcibly to that. And it's not that we need to show insufficient evidence. It's, again, the government's burden to show harmlessness. And when you say that the jury would have needed to be unanimous on any of the theories of kidnapping, what are you relying on for that? I believe a unanimity of theory instruction was given in this case, and I believe the government agrees that it would have had to be unanimous. I'm sorry, I can't cite to a case on this. I can research it more. Are you saying that the kidnapping by kidnap or kidnapping by any of the other means, like embegglement or something, are you saying that those are divisible by means or by method of committing it? Yes, I'm saying – and the government, I believe, actually argued in its closing that the jury would have to be unanimous as to which theory it found, whether it was kidnapping by kidnapping, by embeggling or abducting or something like that. Since you're saying that forcible is something that could have confused the jury and caused them to potentially reach a different outcome, what does it mean to you? What is forcible? What makes something forcible? So a definition of force actually was provided in connection with the aggravated sexual abuse charge. There it was defined as agreed by the parties as physical force that was sufficient to overcome, restrain, or injure another. I think that's a reasonable definition of force. I will point out the Eleventh Circuit, which gives a forcibly instruction, doesn't define forcibly. It leaves it to the jury's plain understanding of it. But I think that's a reasonable definition of forcibly. So in your view, that factor, that element, sufficient to overcome resistance, is something separate then that would have had to have been proven? Yes, and it would have had to be proven in connection with kidnapping. It would have had to be proven in connection with unlawfully holding, keeping, detaining, and confining a person. And I guess just one other question on that. I mean, since the interpretive position is that the concept of kidnapping in the statute brings in common law kidnapping, which itself includes force. If that's true, and it's so standard and obvious, why wouldn't just the use of the word kidnapping in jury instructions also convey inherently a forcible concept? So I think it is inherent and obvious if you look to the common law definition. I think simply relying on kidnapping as a means without definition when the statute itself is called kidnapping. Oh, yeah, but I mean the whole purpose of federal criminal statutes is to prohibit conduct. And so if you don't know what conduct is prohibited, unless you look in a old historical law book about a common law definition, that just seems far-fetched to think that's what Congress was doing when it drafted the statute. I mean, do we think the members voting on it thought common law kidnapping force? I do, actually. I think at the time when they were adopting the statute in the early 20th century, they were attempting to adopt as many different types of kidnapping as they could. Certainly, they meant this to be a broad statute. Well, that undermines your position, doesn't it? Well, but I think it was not – there is inveigling, there's decoy, there are all these other means of kidnapping. But at the time, they recognized that kidnapping can be conducted by force or by fraud. So several of the means of conducting a kidnapping would be by force. What would be your best plain meaning argument as to how kidnapping in the statute here we know means common law and with force? So for plain meanings, we do turn to dictionary definitions. And the only dictionary definition that's been provided by a party is Black's Law, which is forcibly abducting a person. Can we just back up a second? What's our standard of review here? I mean, it seems that counsel agreed to the jury instruction. Wouldn't that put us in the area of plain error as opposed to de novo? In this case, I don't believe so. In this case, it's agreed. Mr. Figueroa raised this himself, not through his counsel. But because the court ruled on it, I believe it is preserved. This court has recognized and the Supreme Court has said that the question for preservation is whether it is pressed or passed upon below. That's our Milwaukee case, right? Yes, which is – I will – it's an unpublished opinion, but it cites to the Supreme Court. Right, right. That's Williams, I think. Yes, exactly. But your adversary points out about the hybrid representation rule. And, you know, you had a rather vociferous client, I think. But we have to be careful as to not let two different – have two different positions on a side, I guess. We do. Hybrid representation is a discretionary rule. So the court can choose to invoke it or not. The court knew how to invoke hybrid representation. It invoked it throughout the case. In this instance, it made the pragmatic decision, as my friend pointed out, that it would rule on this issue. If there are no other questions on the kidnapping, I would like to turn to speedy trial. Sure, go ahead. In this case, Mr. Figueroa, I think it can be agreed, it's undisputed, he was detained for an extraordinarily long time pretrial. He was detained for eight years, which the government acknowledges is unusual. It's extraordinary long. I've never seen a detention that long in a criminal case. Well, but you also had – and this leads me to a question. You also made the argument about COVID and seemed to assign that as a factor militating against the government's position. Isn't that sort of a neutral position? So we need to be careful about the word neutral because the neutral actually does weigh against the government, whereas validly excused would weigh against neither party. The cases are somewhat unclear on this, but the government even acknowledges that the unpublished opinions addressing COVID delays have been unclear as to whether it is a neutral delay weighed somewhat against the government or validly excused time. In any event, that added up to about a year and a half of time. Mr. Figueroa was detained for eight years, which as a standalone factor weighs heavily against the government under the four Barker v. Wingo factors. Well, look, I mean, eight years – we can all say eight years is a long time. It is. But, I mean, isn't a lot of this attributable to your client? I mean, between, you know, competency stuff, changing lawyers, letting the lawyers get up to speed, isn't that accountable toward – attributable to your client? We acknowledge some small amount. I think it's overstated. So, for example, the competency issue. I think the government misapprehends the record. He did not raise competency in March 2015. He was actually very clear that he was simply asking for his attorney to have – or for an expert to have access to him in a jail. He did not raise competency at that time. So that period, 2015, 2016, 2017, was not delayed for his competency requests. He was not making pro se filings during that time. In fact, what we know is that the government was in another trial. The same prosecutor in this case and the same judge had a four- or five-month-long trial at the beginning of 2016 that they were assuredly preparing for. And we know that it was impacting their focus on this case because continuances weren't being properly filed. They weren't being filed timely. Some of them weren't being filed at all. And there is over 200 days of untold time during this period. So that period of time certainly I don't think would weigh against Mr. Figueroa. It would weigh as negligent time at best against the government. Similarly, the time period where he was trying to withdraw his plea, I've never seen it take 16 months to resolve a simple plea withdrawal motion. And it was eventually resolved really, really easily. The government said it wanted to file a response. It never did. It sought to pierce the attorney-client privilege. There were competency arguments made, but none of them were necessary. They ultimately realized that the court had not properly taken the kidnapping plea, and he should have been permitted to withdraw as a matter of right. So that's a 16-month period that I think should be attributed to the government as even at best neutral time that weighs against the government. Mr. Shephard, can I just take you back to where you were a minute ago with the 200 days of untold time in 2015? Could you point me to the dates or the docket numbers from the district court record that reflect that time? So it may not be 200 days entirely in 2015. But as I calculated, there are 55 untold days between 2014 and 2015 at the very beginning from the time of indictment. There are three untold days in June of 2015. Then starting in 2016, January through March of 2016 was only told retroactively, which is improper under the Speedy Trial Act. That was 76 days. In May through June, again, there was a retroactive tolling, and it amounted to 45 days. In August 1st to August 15th of 2016, there were 15 days. Then also in December, there was a week. I apologize, I don't have the docket entries, but I think that's helpful. Then there are additional days that were untold in 2017. But you can see, I mean, we're well over the 70 days for Speedy Trial Act. And we're now, you know, these are not times that were validly excused, agreed upon by the parties. If I can turn to the other factors under Barker, the assertion of the right. The government is arguing there is no right asserted, citing the Fifth Circuit case law. But this court in Battis and in Hakeem has recognized that even a pro se motion by a represented party is an assertion of the right. And the prejudice here is presumed. This court has recognized that even a 45-month period of time is presumptively prejudicial in Battis. This is twice that. One instance, just rolling back a little bit. This is one instance where you're relying on your client himself for asserting the right. Yes, and we make the distinction in our briefing. He didn't preserve this issue. This is on plain error. He did not preserve this issue by filing it, but a pro se motion. And he asked for dismissal, right? He did. And in Battis, all of the motions were for dismissal. They weren't asking for a speedy trial. So I do believe that the prejudice here is extraordinary, both the inherent prejudice of such a long delay. But didn't your client, I mean, didn't your client, I'm talking bigger, you and the lawyers and the defendant himself acquiesce to all this delay? Almost all of it anyway. I see that I'm out of time. Yeah, no, go ahead and answer. So he acquiesced to some of it. As I pointed out before, some of these were not subject to appropriate continuances. Again, to the tune of several hundred days were not actually agreed continuances. I also think when we look to acquiesce time, it is fair to also look at what's actually happening, right? So if the parties agree to a continuance, but we know for a fact that the continuance is actually being motivated by the government having another trial, again, I'm not calling it deliberate delay to harm him. But it's neutral or negligent delay that weighs against the government, who ultimately has the burden, the sole obligation to bring somebody to trial timely. It's not the defendant's obligation, it's the government's. But you're saying that even if it's a joint request for a continuance, we're supposed to look beyond the defendant's agreement to that request? Yeah, and I think the government asks to do the same thing. So for example, after the plea withdrawal, there's a period of time where the defense asks for a couple of months to prepare for trial. It was agreed upon continuance. It was signed by both parties. But it's clear from the record that the defense was asking for a bit of time to prepare for trial. I think the same is true. The practice in New Jersey is to have agreed upon continuances. They enter into agreed upon continuances. But that doesn't necessarily mean that that was the party who needed the continuance. And we certainly, I don't think, could have a situation where a trial could be delayed for decades by agreed continuance. Ultimately, the government eventually has the obligation to bring the person to trial. But why is the defendant's agreement to a continuance not a waiver of his right to assert the time of that continuance as part of a speedy trial violation? So I would say two things. First, the Supreme Court said in Barker v. Wingo that they are very, very careful to ever use the word waiver when we're dealing with speedy trial time. So the failure to assert something, an agreement like that, the Supreme Court is careful not to ever call something waiver. So I just want to address whether or not they've waived any argument as to that time. But again, as to whether or not they can challenge that time or whether it can be waived against either party, even if you take out all of the agreed upon time in this case. So if you take, it would be seven years or something. If you take out all of that time, you would still look to who is to blame for the remaining time. And the remaining time is the fault of the government. That doesn't necessarily address Judge Freeman's question. When we see an agreement, you're saying you've got to look behind the agreement. And we're supposed to do that on paper and in chambers? I mean, what we see is an agreement, an acquiescence. You're saying that that's not good enough. Well, and it may speak to the four factors that we're considering at Barker. But no factor is dispositive, right? So even if the court were to find that the reasons for delay is effectively forfeited or waived or something, and that it's all validly excused time, there are still three other factors to consider. And the other factors weigh, I think, considerably in the defense's favor in this case. Anything else, Jim? Anything else? OK, thank you, counsel. We'll get you on rebuttal. We'll hear from the government. Appreciate it. Good morning, your honors. May it please the court. I'm Sabrina Camazoli. I am representing the appellee, the United States of America. If I might start with the speedy trial claim first, I would like to push back on two points that I think were made in Figueroa's reply brief. And the first is that pro se filings by a represented defendant are a nullity, and therefore they can't possibly cause any delay. Well, they do, and they did here very much so. Because every time the defendant filed a pro se filing, his counsel had to read them, had to do independent research, had to consult with his client, and had to decide whether to adopt them or not and file his own motion. And that took time. And so when you have a represented defendant making numerous pro se filings, it's going to delay everything because it's going to consume defense counsel's time. And if you look at the window of time, after Figueroa moved pro se to withdraw his plea in August of 2018 until December of 2019 when the judge allowed him to withdraw it, that whole time what was happening is that Figueroa kept filing numerous pro se motions, and his counsel had to read them and evaluate them. And finally, in December of 2019, his counsel filed a motion on the only ground he could legitimately ask for relief from the plea. And two weeks later, Judge Chesler granted it. But we're still overall talking about an egregiously long time. So if we take out all of these times, what's the government's position on the total amount of time that it took to get to trial minus what you're attributing to the defendant? Your Honor, I have not done that precise calculation. But I think other than the time that there were no trials going on in the District of New Jersey due to COVID, most of the delay was due to the defendant. And I would say at least 60 percent and perhaps 80 percent of the delay was due to the defendant. What do you think is a reasonable amount of time to fit within speedy trial? I think every case is different. And under the Barker factors, it's super fact intensive. And this is a very unusual case in many respects with an unusual period of delay. So I think that, in fact, it took almost eight years to get to trial, considering everything that went on in this case is not a violation of his Sixth Amendment right. Have you all located any other examples where there's been a trial period that's lasted eight years? Well, I believe the Doggett case was eight years. But there the government was negligent in not telling the defendant he'd been indicted and he didn't know it for like six of those eight years. And the government admitted it was negligent. But that is certainly not the case here. And I don't recall seeing anything as long as this. I'm happy to address further issues involving the way before you go there. Let's talk. We talk about covid. Is this so-called neutral factor? Or I mean, there have been other courts of appeals that have passed on this. How should we decide it? Your Honor, I've seen it as both neutral and then also slightly weighing against the government. I feel like it should be a neutral factor because the courts were literally closed and it wasn't the prosecution's fault. It wasn't the court's fault. It wasn't the defendant's fault. It was a unique circumstance caused by a 100 year pandemic. And I feel like that should be a neutral factor. In combination with all the other Barker factors. I mean, no one factor here, I think, weighs out and that is part of the delay factor. OK. I'm happy to address the kidnapping claim. The first response I'd like to make of this to Mr. Figaro's argument is that it is not clear to me that the common law definition for all of the seven means Congress listed in the statute is the right definition when the plain meaning might itself do. And the statute does not define any of those seven means, not even kidnapping. And although I know the Black's Law Dictionary uses the word forcibly in defining kidnapping, I believe the Oxford English Dictionary does not. Kidnap is to steal or carry off. And the jury instructions here and in patterns elsewhere also never defined carry away and never defined abduct, which were the two other means that the jury was charged on here. The jury could have easily found one of those three means. We don't know if it definitely found kidnapping as a mean as a means. But even if it did, without the definition of forcibly, that is surely harmless error. Given all the facts of this case, whether under plenary, whether under harmlessness, whether under plain error review. Which one should we be playing? Well, you're giving us all all of them. Take your pick. No, I will first make an argument why it should be plain error. OK, I know that the judge took it upon himself to do research. And yes, and good, good for him because the judge is in charge of making sure when the old guy does research on his own because it's always shaky. Go ahead. Judge Vasquez was an excellent judge and he did his own research, which is not at all surprising. But the parties here, the lawyers for the parties here were in agreement already on what the charge should say. But they didn't do their own independent research or briefing or advocacy. There was no advocacy here on both sides about what that charge should be because the parties agreed to it in a situation like this. You know, under Rule 30, where parties have to challenge jury instructions in order to preserve their claims. And under Rule 51, where parties have to raise an issue or or the result is plain error under Rule 52. We have a situation where the represented parties here did not raise this. So that leads us to Rule 52. And I don't know how we get out of plain error world. Well, what about the district court having ruled on this issue? The district court ruled on it and there is a record. So that is helpful. This court can consider that record. But again, the parties didn't raise it. Well, so I mean, I see some tension here, though, a minute ago when we were talking about speedy trial, you said motions filed by represented parties are a nullity. But it's hard to to apply that here. Where how could it be a nullity when it inspired the district court to do its own research and, in fact, issue a ruling? That that that is an interesting conundrum. The judge, the judge did his own research and he set forth his findings. And that is something for this court to review. So I could see how the plenary standard would would make sense here. And then you get to a harmless error and surely it is harmless beyond a reasonable doubt that it did not affect the lack of a forcibly instruction did not affect the jury's verdict. And Mr. Mr. Shepard said that the government agreed that the jury needed to be unanimous as to what method of kidnapping it is. That's your your position on appeal. Yes. Yes, your honor. I've seen that in multiple jury charges from multiple other circuits. I don't remember off the top of my head having seen it in case law, but it is probably there as well. I'd be happy to provide further briefing if your honor would like a citation to case law. I don't I don't think that's necessary. There was a contention in this case. Yes. Yes, your honor. The parties agreed. The government agreed that unanimity was required on one of the seven means. So how about harmless error? Would this be harmless if it was error? If it was error. And again, I don't think a kidnap a forcibly instruction is required to go with the kidnapping means. But if it was error, it is surely harmless given all of the uses of force, which I'm happy to go through. The first is when he grabbed her out of her home. Figueroa beat victim over the head with the butt of a shotgun. I think we know the facts. I think I think we're good there. OK, your honor. I would just say that under a harmlessness standard, all the facts went towards the use of force, many different uses of force. And when the government closed, it recited all the uses of force, calling them force and not shying away from the fact that force was used, even though the jury did not have to find that specifically. And I think that goes to the harmlessness of any error here. If the court has no further questions, I would be happy to sit down and ask that the court. Well, thank you, counsel. Please affirm the conviction. Thank you very much. Thank you, counsel. We'll hear from your friend. Thank you. I just want to address a couple of issues on the speedy trial question, not the kidnapping instruction on the on the speed trial issue. I think there is, with respect to my friend, I think there's a bit of speculation about the amount of time that was wasted by these pro se filings. Pro se filings were not they were not responded to by the government. They were not ruled on. They were often stricken within days. So insofar as they may have resulted in a couple of days of of inconvenience, I agree. Mr. Figueroa filed a lot of pro se filings. But insofar as they caused some inconvenience, it certainly came nowhere near the eight year delay in this case. I just want to point out, Judge Mascott asked the question about whether or not there was a case where eight years had passed. Dog it. There was a violation found. And in that case, the eight years was not a detention. It's incredibly important here that Mr. Figueroa was detained the entire time because that is part of the prejudice that he that he assumed during that time. I have not found another case with an eight year pretrial detention and I certainly have not found a case where an eight year pretrial detention did not amount to a violation on on appeal. The court had a number of questions about covid and and whether it is neutral or valid excuse. And again, I apologize if I'm being overly pedantic about neutral versus validly excused. But I do think that there's some confusion created in the case law around those distinctions. My friend is correct. It was not the prosecutor's fault that covid happened. But those types of institutional delays are regularly weighed, not heavily, but they weigh against the government. Court congestion weighs against the government. Things that are clearly not the government's fault weigh against the government because it's ultimately the government's burden to bring these cases timely. And again, the covid time only amounted to about a year and a half of the delay. Does that accord with Keith and Gordon and Snyder, those circuit cases? Yes. And the circuit cases do say that it should weigh against neither party. But again, there's even confusion there about when they use the term neutral versus validly excused. But I certainly I can understand if the court treats it as validly excused time. It's a year and a half. And I still think there's a lot of time the government hasn't accounted for. So for all those reasons, we ask the court to vacate Mr. Figaro's convictions if there are no further questions. I actually I'm sorry for the question. Going back to forcibly in the kidnapping instructions, there are other criminal statutes that use the term forcibly. So what's your position about it? It's noticeably absent from this statutory offense. It is noticeably absent. I think that here the understanding was that by laying out seven different types of kidnapping, the court intended to define seven different types of kidnapping. If they all meant the same thing, if they all just meant carrying away, it wouldn't have needed this. And when passing the statute, there was an understanding that we are adopting for kidnapping by force and kidnapping by fraud. And some of those are meant to be forcible conduct. Again, if kidnapping did not have a forcible component, I don't know how it's distinguishable from the broader statute writ large. And I don't know how a jury could understand that it would run up against the canon of surplusage. But again, that's why I was trying to get you before to talk a little bit more specifically about what would be forced because like physical kidnapping and kidnapping by fraud can be dramatically different things. Kidnapping by fraud. Somebody could literally be staying someplace consciously on their own will, but because they believe some false set of circumstances surround them. So I'm not sure that the only other alternative to that is some severe kind of force. So I guess I'm just wondering what is required to get to force and what would the jury had to understand? No. So certainly there there could be other definitions of force. I provided the one that was given in another context. But but other definitions of force would include the use of physical force or threat of force. There may be other definitions of force. But again, the only circuit that gives a forcibly instruction doesn't define the term. But if we found that the current jury instructions under review here, if the jury had an understanding that was similar to what you just say, we're not certainly not saying that the magic word force had to be used in the jury instruction. That's not the rule that you're asking the circuit to adopt. We are asking for forcibly to be the word. That's what that's preserved. That's what the instruction is. That's what the 11th Circuit uses. So it really is as simple as the government asked for a definition that didn't include the word forcibly. We just wanted the word forcibly inserted there. I think that if the court thinks that in addition to forcibly, the term forcibly should be defined. I, of course, defer to the court if that's helpful to juries. But again, the 11th Circuit pattern, the only difference is that word forcibly. It just seems to me you have a higher burden to reach if you're going to say that it's only a lawful instruction. If that precise word is used. Yes. Though I think this this issue likely comes up relatively infrequently because the government can proceed on all seven versions of the kidnapping statute. So here the government for strategic rights, imagine for reasons, proceeded only on kidnapping, abducting and carrying away theory. So in other cases, there might be a stronger argument of, well, we don't need to define kidnapping because it certainly was invading or it certainly was seizing. But here the government in its indictment and its argument limited its theories of kidnapping. Thank you. Thank you. Thank you, counsel. We'll take this case under advisement and thank counsel for their excellent arguments, both written and verbal today. And if counsel like last case, if they'd like to meet a side sidebar, we'd like that. And I'll ask the clerk to adjourn.